IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROSEMARY LEYBA,                                    No. 6:12-cv-01984-HZ

        Plaintiff,                                   OPINION & ORDER

    v.

CAROLYN COLVIN, Commissioner,
Social Security Administration,

        Defendant.

Richard F. McGinty
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309

    Attorney for Plaintiff

Adrian L. Brown
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

John C. LaMont
Social Security Administration
Office of the General Counsel – Region X
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Rosemary Leyba brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  I have jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)).  For the following reasons, I affirm the Commissioner's decision.

## BACKGROUND

      Plaintiff was born in 1957 (Tr. 96) and was 43 years old at the alleged onset of disability.  She completed the seventh grade (Tr. 171) and reports past work as a housecleaner and a warehouse packer.  Tr. 107.  Plaintiff alleged disability since January 1, 2000 (Tr. 96) due to mental illness, hepatitis C, comprehension problem, chemical imbalance, and anxiety.  Tr. 167.

      The Commissioner denied her application initially and upon reconsideration (Tr. 61-62), and an Administrative Law Judge ("ALJ") held a hearing on February 22, 2011.  Tr. 27.  The ALJ found Plaintiff not disabled on March 9, 2011.  Tr. 8.  The Appeals Council declined review of the matter on October 5, 2012, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

## SEQUENTIAL DISABILITY ANALYSIS

      A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

2 - OPINION & ORDER

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

The ALJ found Plaintiff's depressive disorder NOS, PTSD, personality disorder NOS with borderline traits, borderline intellectual functioning, and history of polysubstance abuse "severe" at step two in the sequential proceedings. Tr. 13. At step three, the ALJ found that the impairments, singly or in combination, did not meet or equal the requirements of any listed impairment. Tr. 14. The ALJ assessed Plaintiff's RFC and concluded that she could perform "a full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple, routine, unrushed tasks involving no more than occasional contact with the public and coworkers." Tr. 15. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 20. The ALJ found there were jobs existing in the national economy in sufficient numbers that Plaintiff could have performed. Tr. 20. The ALJ therefore found Plaintiff not disabled under the Commissioner's regulations. Tr. 21.

STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the

Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Plaintiff raises several errors in the ALJ's decision: (1) failure to include a functional limitation from Plaintiff's headaches in the RFC, (2) improperly evaluating the medical evidence, and (3) failure to resolve a conflict between the vocational expert ("VE") testimony and the Dictionary of Occupational Titles ("DOT").

I.  RFC Error

Plaintiff argues that the ALJ erred by failing to incorporate limitations resulting from Plaintiff's headaches into her RFC. In formulating a claimant's RFC, the ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). However, "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ did not find Plaintiff's headaches were severe at step two, and no limitation from the headaches appear in Plaintiff's RFC. Tr. 13, 15. The ALJ found that medication "reduced the alleged frequency of her headaches from daily to weekly." Tr. 13 (citing Exs. B18F-20F). Plaintiff argues that even with her weekly headaches, she would miss one day per

week from work, and consequently, would be unemployable. Pl.'s Br. 6. Plaintiff's cites to several places in the record in support of her argument. However, these cites only briefly document that Plaintiff complained of headaches. See e.g., Tr. 222 ("client reported…headaches"), 225 ("Per client report…headaches"), 330 ("troubled by headaches"). These cites to the record do not show that Plaintiff's headaches had any impact on her functioning. There is no evidence in the record to suggest that Plaintiff would need to miss one day of work per week due to her headaches, as Plaintiff argues. I find no error with Plaintiff's RFC, and thus, the ALJ's finding is affirmed.

II.     Medical Evidence

Plaintiff argues that the ALJ erred by improperly evaluating the medical opinions of Drs. Paul Rethinger, Robert Kruger, and Joel Suckow.

A.     ALJ's Findings

The ALJ considered the medical opinions of four doctors—Maribeth Kallemeyn, Paul Rethinger, Joel Suckow, and Robert Kruger. Tr. 16-17. With the exception of Dr. Rethinger, all the doctors examined Plaintiff in person.

On July 14, 2008, Plaintiff visited Dr. Kallemeyn for a psychodiagnostic evaluation. Dr. Kallemeyn diagnosed Plaintiff with depressive disorder NOS, PTDS, alcohol abuse, opioid dependence in remission, history of polysubstance abuse, rule out learning disorder, personality disorder NOS with borderline traits, and rule out borderline intellectual functioning. Tr. 225. Dr. Kallemeyn recommended a neuropsychological evaluation to further assess Plaintiff's intellectual and cognitive functioning. Id. The ALJ gave great weight to the diagnoses, but no

weight to observations during the mental status exam because the ALJ found Plaintiff not credible[1] and Dr. Kallemeyn had relied on Plaintiff's self-reports.

On August 13, 2008, Dr. Rethinger reviewed Plaintiff's medical records from August 2007 to July 2008, which included Dr. Kallemeyn's evaluation. Tr. 240. Dr. Rethinger concluded that Plaintiff had the capacity to "understand, remember and complete simple, unrushed instructions, tasks/procedures on [a] routine basis." Tr. 244. Dr. Rethinger also limited Plaintiff to "minimal contact w/general public as well as limited contact w/coworkers/peers." Id.

On April 9, 2009, Plaintiff met with Dr. Suckow. Dr. Suckow diagnosed Plaintiff with polysubstance abuse, rule out bipolar affective disorder, rule out PTSD, and rule out mental retardation/autistic spectrum. Tr. 251. Later, on November 2010, Dr. Suckow diagnosed Plaintiff with major depressive disorder and history of polysubstance abuse. Tr. 400. The ALJ gave little weight to Dr. Suckow's opinion because there was no record of Plaintiff's initial meeting, there is no record of psychological tests or similar objective measures, there was no rationale for Dr. Suckow's opinion that Plaintiff would decompensate in a work setting, and the November 2010 notes indicate that Plaintiff's mental health had improved with medication. Tr. 17-18.

On October 23, 2010, Plaintiff visited Dr. Kruger for a mental status assessment and neuropsychological examination. Tr. 266. Dr. Kruger also had access to Dr. Kallemeyn's evaluation and Dr. Suckow's treatment note. Id. Dr. Kruger diagnosed Plaintiff with depressive disorder NOS, history of opioid dependence, history of alcohol abuse, borderline intellectual functioning, and reported back pain, headaches and hepatitis C. Tr. 272. Although Plaintiff's full-scale score on the WAIS-IV was 46, Dr. Kruger advised caution because of Plaintiff's poor

---

[1] Plaintiff does not challenge the ALJ's finding that Plaintiff lacked credibility (Tr. 19).

performance on the TOMM validity test "is suggestive of secondary gain, possibly reflective of malingering." Id. The ALJ gave great weight to Dr. Kruger's opinion regarding Plaintiff's mental status because he administered several psychological tests. Tr. 18. The ALJ also gave great weight to Dr. Kruger's concerns that Plaintiff was malingering, but little weight to his opinion that Plaintiff has no social functioning limitations. Id.

In summary, the ALJ gave great weight to Dr. Kallemeyn's and Dr. Kruger's opinion, with some exceptions, and least weight to Dr. Suckow. The ALJ gave greatest weight to Dr. Rethinger because it best summarized the findings of all the medical sources.

B.     Errors Raised

Plaintiff argues that (1) Dr. Suckow's opinion that Plaintiff is not employable and would decompensate at work should be given significant weight, (2) the ALJ misinterpreted Dr. Kruger's observation that Plaintiff was "significantly exaggerating her memory deficit," and (3) Dr. Rethinger's opinion is not substantial evidence to contradict Dr. Suckow's opinion. Pl.'s Br. 8, 9, 11.

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. Id. If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. Id. at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

1.  Dr. Suckow

The ALJ gave several specific and legitimate reasons for discrediting Dr. Suckow. Plaintiff rebuts the ALJ's reasons by citing to evidence that was not before the ALJ.[2] The evidence submitted by Plaintiff after the ALJ's decision is part of the record.

> The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision.

Brewes v. Comm'r of SSA, 682 F.3d 1157, 1162 (9th Cir. 2012) (citing 20 C.F.R. § 404.970(b)). While reviewing this evidence that was not the basis of any administrative findings, the district court must refrain from making independent findings and is constrained to review the evidence and reasoning given by the Commissioner as the basis for the decision. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)). Therefore, the district court must consider this evidence when reviewing whether the Commissioner's final decision is supported by substantial evidence. Brewes, 682 F.3d at 1163 (citation omitted).

I will address each of the ALJ's reasons for discrediting Dr. Suckow's opinion. The ALJ noted the absence of records for Plaintiff's initial meeting with Dr. Suckow. This reason fails in light of the records submitted after the ALJ's decision. Second, the ALJ noted the absence of psychological tests or similar objective measures. Plaintiff concedes that there is no objective basis to support Dr. Suckow's opinion that Plaintiff is not employable. Pl.'s Br. 12. However, Plaintiff argues that Dr. Suckow's observations of Plaintiff's mood and manner is objective

---

[2] At the hearing, the ALJ confirmed with Plaintiff that the most recent exhibit was a February 4, 2011 medication list, Exhibit 24F. Tr. 30. After the ALJ's decision in March 2011, Plaintiff submitted Exhibits 25F through 30F on February 23, 2012 through March 7, 2012. Tr. 430-500 (see fax time stamps).

evidence. Id. at 13. While the observations may be objective, the ALJ was correct that Dr. Suckow did not perform any psychological tests to verify his opinion.

Next, the ALJ noted the absence of a rationale for Dr. Suckow's opinion that Plaintiff would decompensate in a work setting. Plaintiff rebuts this reason by citing to evidence not considered by the ALJ in which Dr. Suckow noted that Plaintiff remained "at risk for antisocial behaviors that could put her at risk for returning to jail/prison." Tr. 437. Dr. Suckow's conclusion that Plaintiff would decompensate at work was noted *a month later* on April, 9, 2009. Contrary to Plaintiff's assertion, Dr. Suckow did not conclude that Plaintiff's antisocial behavior would result in decompensation.

Finally, the ALJ noted that Dr. Suckow had indicated Plaintiff's mental health improved with medication. As an example of improvement, the ALJ noted that Plaintiff's GAF score increased from 48 in January 2009 to 60 in September 2010. Plaintiff again cites to evidence not considered by the ALJ and argues that the ALJ "cherry picked" the medical evidence to support the ALJ's findings. Pl.'s Br. 15. The new evidence shows that Plaintiff's GAF score fell to 48 in October and November 2011. Tr. 491, 500. The ALJ cannot be faulted for not considering evidence that was not in the record at the time of his decision. Dr. Suckow's notes provide some insight into why Plaintiff's GAF score decreased in late 2011. He notes that Plaintiff was experiencing relationship problems with her boyfriend (Tr. 491) and that she "has not demonstrated longevity/consistency with implementing coping techniques for managing her anxiety and depression." Tr. 492. Dr. Suckow further noted that Plaintiff may benefit from continued counseling and medication. Tr. 500. The ALJ found that Plaintiff's mental health improved with medication. This finding is supported by substantial evidence. The new evidence cited by Plaintiff (her lower GAF score) does not contradict this finding.

    2.  Dr. Kruger

Plaintiff argues that the ALJ overstated Dr. Kruger's opinion that Plaintiff was malingering.  Dr. Kruger evaluated Plaintiff, and also had access to Dr. Kallemeyn's evaluation and Dr. Suckow's April 2010 notes.  He made the following observations about Plaintiff during the evaluation.

- "[H]ad concerns about her effort in responding to various money-exchange questions."  Tr. 268.

- "[H]ad concerns about her effort, based on her performance on various tasks throughout today's examination, coupled with her noticeably poor performance on the TOMM validity test."  Tr. 268.

- "TOMM provides a way of reviewing an individual's motivation and effort, along with a systematic method to determine and discriminate between bona fide memory-impaired patients and malingerers.  Ms. Leyba's performance on the TOMM revealed that she was significantly exaggerating her memory deficit.  This makes it difficult, if not impossible to access whether genuine memory impairment may exist."  Tr. 271.

- "[A]s a consequence of her inconsistencies in a number of her responses in various examinations, coupled with information she provided throughout today's evaluation and her noticeably poor performance on [TOMM], she is seen as not putting forth her best effort."  Tr. 271.

- "Ms. Leyba's overall memory components were seen as noticeably impaired, based on her performance on the WMS-III; however, again, one needs to be cautious in interpreting her results as a consequence of her limited effort in completing the tasks."  Tr. 272.

- "Her poor performance on the TOMM certainly is suggestive of secondary gain, possibly reflective of malingering.  As a consequence, it certainly will be difficult to ascertain her genuine assets and limitations."  Tr. 272.

Based on Dr. Kruger's test results and comments, the ALJ found "that claimant was significantly exaggerating her limitations."  Tr. 18.  Plaintiff argues that this finding overstates Dr. Kruger's observations—that the malingering was limited to Plaintiff's memory limitations, and not all limitations.  I disagree.  As evidenced above, Dr. Kruger's concerns about Plaintiff's

11 - OPINION & ORDER

performance on the tests went beyond the TOMM.  The ALJ did not err in evaluating Dr. Kruger's opinion.

        3.    Dr. Rethinger

Plaintiff argues that Dr. Rethinger's opinion should not have been given greatest weight because he primarily relied on Dr. Kallemeyn's opinion, which the ALJ credited only for the diagnoses.  Pl.'s Br. 7.  Plaintiff asserts that Dr. Rethinger's opinion is not "substantial evidence to contradict Dr. Suckow's opinion[.]"  Id. at 8.

The ALJ gave greatest weight to Dr. Rethinger's opinion because it best summarized his findings of the medical evidence.  The ALJ had given great weight to Drs. Kallemeyn and Kruger, with some exceptions.  Dr. Kallemeyn had relied on Plaintiff's self-reports.  Since the ALJ found Plaintiff not credible, he partially discredited Dr. Kallemeyn's observations of Plaintiff's mental status.  Tr. 18.  Regarding Dr. Kruger, the ALJ disagreed with his observation that Plaintiff had no limitation on social functioning because the record did not support such a finding.  Id.  And, as discussed above, the ALJ gave specific and legitimate reasons for discrediting Dr. Suckow's opinion.

III.    VE Testimony and DOT Conflict

At step five, the ALJ relied on the VE testimony that Plaintiff could perform the occupations of folder, laundry sorter, and folding machine operator.  Plaintiff argues that the ALJ erred because the RFC includes a limitation for "unrushed instructions, tasks, and procedures," but that the descriptions for the jobs noted by the VE do not indicate that they are performed in an unrushed manner.  Pl.'s Br. 18.

The occupational evidence provided by a VE should be consistent with the occupational information supplied by the Dictionary of Occupational Titles (DOT).  Soc. Sec. Ruling (SSR)

00-4p, 2000 SSR LEXIS 8, available at 2000 WL 1898704.  Where there is an apparent conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a decision about whether the claimant is disabled.  Id.  The ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so.  Id.; see also Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (ALJ must first determine whether a conflict exists and if so, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for  relying on the VE rather than the DOT) (citing SSR 00-4p, 2000 SSR LEXIS 8).

Plaintiff has not demonstrated that there is an apparent conflict between the VE testimony and the jobs presented by the VE.  Plaintiff's argument is based on her own interpretation of the DOT job descriptions.  Plaintiff further argues that all of the occupations "are production type activities where speed of product output is essential to sustaining the occupation."  Pl.'s Br. 18.  At the hearing, the ALJ asked the VE, "is all your testimonies today, been according to the DOT?"  Tr. 59.  The VE answered "yes."  Id.  None of the job descriptions suggest that they are to be performed at a rushed pace or require production quotas.  Plaintiff has not given sufficient reason for me to supplant the VE's judgment with Plaintiff's interpretation of the DOT job descriptions.  The ALJ's reliance on the VE testimony at step five is affirmed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

13 - OPINION & ORDER

CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 19 day of November, 2013

MARCO A. HERNANDEZ
United States District Judge

14 - OPINION & ORDER